IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS DANIEL VEITCH, AIS#180586 | ) ) ) | Case No.: 2:08-cv-0043-MEF |
| Plaintiff, | ) ) ) | **WRITTEN REPORT AND ANWER** |
| vs. D.K. CORKRAN, et al., | ) ) ) ) | |
| Defendant. | ) ) ) ) ) | **JURY TRIAL DEMANDED** |

COME NOW D. K. Corkran and Chief Art Baylor, by and through undersigned counsel, and in response the Court's order of February 1, 2008 (Doc. No. 7) submits the following written report and answer:

## WRITTEN REPORT

**I.  PLAINTIFF'S COMPLAINT**

Thomas Veitch filed the complaint in the instant case alleging Eighth Amendment cruel and unusual punishment and Fourteenth Amendment equal protection claims arising out of his arrest and subsequent detention on October 26, 2006.

The only specific act about which Veitch complains in his complaint is his allegation that "Corkran did intentually [sic] willfully, maliciously, and unlawfully kick plaintiff while plaintiff was lying face down, handcuffed, fracturing 2 ribs." (Complaint, Doc. No. 1). The facts stated in the complaint make it clear that the said act is alleged to have occurred at or near the time of arrest.

II.     DEFENDANT'S RESPONSE

   A.     <u>FACTS</u>

On Thursday, October 26, 2006 at approximately 1912 hours, a call went out over the Montgomery Police Department radio involving a business robbery at 4339 Atlanta Highway, ICBY Yogurt. *(EXHIBIT A, Affidavit of D.K. Corkran).* A lookout of the suspect was given while units were in route. *(EXHIBIT A, Affidavit of D.K. Corkran).* The lookout described the suspect (later to be determined as Plaintiff, Thomas Daniel Veitch) as a white male in his forties and advised that the suspect had fled the business in a champagne-colored car headed away from the business—possibly east. *(EXHIBIT A, Affidavit of D.K. Corkran).* Defendant Corkran was in the area of Federal Drive when Unit 439 (Detective Thornell) advised that the suspect vehicle was likely a silver 2000 Saturn LS1 tag #3A4999V. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran observed a vehicle matching that description headed north on Federal Drive in the area of Sumter Avenue. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran turned his vehicle around to confirm the suspect vehicle's tag number and got behind the vehicle as it took a left onto Crestview Drive off of Federal Drive. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran confirmed the tag displayed on the vehicle as 3A4999V. *(EXHIBIT A, Affidavit of D.K. Corkran).* He advised channel 1 that he was behind the suspect vehicle and that the suspect had turned right onto Fairground Road headed north. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran advised dispatch that he was waiting for additional units and that he had not attempted to stop the vehicle. *(EXHIBIT A, Affidavit of D.K. Corkran).* He continued to follow the suspect until he approached Fairground Road and Powell Lane when the suspect vehicle began to slow down. *(EXHIBIT A, Affidavit of D.K. Corkran).*

Corkran observed another patrol car on Traffic Operations Drive at Fairground waiting for the suspect vehicle and him to pass. The suspect vehicle then accelerated and took a sharp left hand turn toward Powell Lane. *(EXHIBIT A, Affidavit of D.K. Corkran).* The suspect had already

passed Powell Lane, so when he turned he ended up on the railroad tracks running parallel to Powell Lane off the right side of the roadway. *(EXHIBIT A, Affidavit of D.K. Corkran).* It appeared the suspect was trying to free the vehicle from the tracks and get onto Powell Lane when he drove into the ditch between Powell Lane and the railroad tracks continuing to drive toward East Street. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran drove parallel to the suspect on Powell Lane and as he and the suspect passed Flintstone Court the suspect pulled the vehicle out of the ditch and back onto the roadway in front of his vehicle. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran advised channel 1 that the suspect was attempting to flee and that he and the suspect were on Powell Lane traveling toward East Street. *(EXHIBIT A, Affidavit of D.K. Corkran).* As he and the suspect approached East Street the suspect attempted to make the left turn at an excessive rate of speed. He lost control of the vehicle and made a 180 degree spin on East Street facing the driveway of 3466 East Street. *(EXHIBIT A, Affidavit of D.K. Corkran).* The suspect then accelerated through the driveway at that residence, around Corkran, and back onto Powell Lane striking the front of the trailing patrol vehicle, Unit 205. *(EXHIBIT A, Affidavit of D.K. Corkran).* The impact drove both the suspect vehicle and Unit 205 into the ditch beside the railroad tracks where they both came to rest. *(EXHIBIT A, Affidavit of D.K. Corkran).*

Corkran, exited his patrol vehicle with his service weapon drawn and commanded the suspect to get out of his car. *(EXHIBIT A, Affidavit of D.K. Corkran).* The suspect got out and lay down on the ground, face down with his hands out. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran knelt and placed his knee on the suspects back and ordered him to place his hands behind his back. *(EXHIBIT A, Affidavit of D.K. Corkran).* The suspect was compliant, and Corkran holstered his weapon and placed the suspect in handcuffs. *(EXHIBIT A, Affidavit of D.K. Corkran).* Corkran, then, dismounted the suspect and called for a paramedic for the other

patrol officer who was trapped in her vehicle. *(EXHIBIT A, Affidavit of D.K. Corkran).* Within a couple of minutes, other units arrived, and the suspect was placed in the back of a patrol car.

The suspect was later identified as 51 year old white male Thomas Daniel Veitch, Date of Birth 2/5/55 of 640 Groveland Drive. *(EXHIBIT A, Affidavit of D.K. Corkran).* Veitch was transported back to the scene of the robbery where he was positively identified as the robbery suspect. *(EXHIBIT A, Affidavit of D.K. Corkran).* He was then transported to the Detective Division where he was turned over to Unit 439 (Detective Thornell) for questioning. *(EXHIBIT A, Affidavit of D.K. Corkran).*

While in custody, Veitch complained of pain to his rib area. *(EXHIBIT B, Montgomery Fire Department Emergency Medical Run Report).* The Montgomery Fire Medics were dispatched and Veitch's vital signs were checked. Paramedics noted that he had no obvious injury, but he was referred to Jackson Hospital for x-rays. *(EXHIBIT B, Montgomery Fire Department Emergency Medical Run Report).*

B.   **LAW**

Since Veitch was, at all times material to the complaint, a pretrial detainee, his Eighth Amendment claim is properly evaluated under the due process clause of the Fourteenth Amendment. <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla</u>, 402 F.3d 1092 (11th Cir.,2005). The Eleventh Circuit has recognized, however, that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1573 (11th Cir.,1985).

Likewise, while Veitch has denominated his claim in Ground Two of the complaint as a Fourteenth Amendment equal protection claim, the Supporting Facts indicate that the claim is one for "excessive force in detaining arrestee." (Complaint, Doc. No. 1). Excessive force in arrest claims are properly analyzed under the Fourth Amendment's seizure framework. Chavez v. Martinez, 538 U.S. 760, 774, 123 S.Ct. 1994, 2005 (2003); Graham v. Conner, 490 U.S. 386, 109 S.Ct. 1865 (1989).

The incipient question, then, becomes under which standard the alleged act should be analyzed. And that question turns upon an understanding of the point at which an arrest ends and a pretrial detention begins. "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit. Hicks v. Moore, 422 F.3d 1246, 1254, note 7 (11th Cir. 2005).

**(1)    FOURTH AMENDMENT (Objective Reasonableness Standard)**

Since the complaint specifically alleges that Corkran used "excessive force *in detaining arrestee*," the court may determine that analysis is proper under the Fourth Amendment. The Supreme Court has ruled that the use of excessive force in making an arrest is properly analyzed under the Fourth Amendment's objective reasonableness standard rather than under the substantive due process standard of the Fourteenth Amendment. Graham v. Conner, 490 U.S. 386, 396, 109 S.Ct. 1865, 1867-68 (1989).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Conner, 490 U.S. 386, 396, 109 S.Ct. 1865, 1867-68 (1989).

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick,* 481 F.2d, at

> 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-397, 109 S.Ct. at 1868 (1989).

The only physical touching of Veitch by Corkran which could have resulted in injury occurred when Corkran placed his knee on Veitch's back pinning him to the ground—standard arrest procedure for the Montgomery Police Department. That touching was reasonable in the context of taking Mr. Veitch into custody after a high-speed chase in which he rammed a police vehicle.

### (2) FOURTEENTH AMENDMENT

If the court determines that, at the time of the alleged excessive force, the arrest was complete and the pretrial detention had begun, the case should be analyzed under the Fourteenth Amendment's due process provision. Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla, 402 F.3d 1092 (11th Cir.,2005). As stated above, The Eleventh Circuit has recognized, however, that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Hamm v. DeKalb County, 774 F.2d 1567, 1573 (11th Cir.,1985).

"In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights 'ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir.,2007) *citing* Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 Led.2d 251 (1986).

Corkran's action under this standard, too, must be seen as not violating Veitch's due process rights given the circumstances of the arrest. Corkran himself states that while taking Veitch into custody, Veitch did not struggle and was compliant with his commands. No escalation of force was necessary and none was taken.

### (3)   QUALIFIED IMMUNITY

Regardless of the standard used by the court to analyze Corkran's conduct, he is entitled to qualified immunity for his actions. "To be shielded from suit by qualified immunity, a public official must first show that he was acting within the scope of his discretionary authority." McCray v. City of Dothan, Not reported in F.3d, 2003 WL 23518420; *see also* Vinyard v. Wilson, 311 F.3d 1340, 1336 (11th Cir.2002). "If he does so, the burden then shifts to the plaintiff to show, first, facts establishing that a constitutional violation occurred, and second, that the constitutional right was clearly established at the time of the violation." McCray *supra;* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

The manner in which Corkran took into custody was, clearly, within the scope of Corkran's discretionary function as a police officer. Even if the plaintiff can establish that a constitutional violation occurred, he cannot show that that the constitutional right was clearly established at the time of the violation because, if for no other reason, the courts have not clarified when and at what point a seizure for Fourth Amendment purposes ends and pretrial detention for purposes of Fourteenth Amendment purposes begins. *See* Hicks v. Moore, 422 F.3d 1246, 1254, note 7 (11th Cir. 2005). If the courts cannot determine what right is at stake with the application of force immediately after the arrest occurs (because Veitch complains that he was

kicked while laying face down on the ground while handcuffed), then the officer cannot be expected to know.  The officer, therefore, cannot know what standard of conduct is expected of him.

"The right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194 at 201, 121 S.Ct. at 2156 (2001) *emphasis added, citing* Anderson v. Creighton, 483 U.S. at 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  Put more succinctly, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is *whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted*.  Saucier v. Katz, 533 U.S. 194 at 201, 121 S.Ct. at 2156 (2001); *see also* Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Moreover, Eleventh Circuit Court of Appeals has held that a constitutional right is clearly established only "if controlling precedent has recognized the right in a concrete and factually defined context." Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).  There is no such "controlling precedent" here.  To the contrary, "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit." Hicks v. Moore, 422 F.3d 1246, 1254, note 7 (11th Cir. 2005).  The right—whichever the court determines should apply in this case—was not, therefore, clearly established to Corkran such that he, or a reasonable officer, could know whether his conduct was unlawful under the circumstances.

For the same reason, the defendant Baylor is entitled to the same qualified immunity to which Corkran is entitled.

### (4) SUPERVISORY LIABILITY

As to the plaintiff's claim against Chief Art Baylor, the claim is based solely on Baylor's supervisory position, and not on any overt act or omission performed by said defendant. In the eleventh circuit, supervisory liability under §1983 only occurs when "the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir.1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir.19988) (per curiam). At a minimum, the plaintiff must establish that there is a history of abuse of the type alleged which is so widespread that the supervisor is put on notice and fails to take action to correct it. Brown v. Crawford, 906 F.2d at 670.

The plaintiff has failed to make any such accusations in this case. There is, therefore, no compensable action against Baylor alleged in the complaint.

### ANSWER

**COME NOW** the Defendants, D.K. Corkran and Art Baylor, by and through undersigned counsel and, in accordance with this Court's order of February 1, 2008 (Doc. No. 7), submit the following Answer to Plaintiff's Complaint.

### GROUND ONE

1. Defendants deny the material allegations set forth in Ground One of the Complaint and demand strict proof thereof.

### GROUND TWO

2.   Defendants deny the material allegations contained in Ground Two of Plaintiff's Complaint and demand strict proof thereof.

## GROUND THREE

3.   Defendants the material allegations contained in Ground Three of Plaintiff's Complaint and demand strict proof thereof.

4.   Defendants deny the remaining material allegations contained in the Complaint, including the demand for relief, and demand strict proof thereof.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Defendants plead the general issue.

### SECOND AFFIRMATIVE DEFENSE

Defendants aver that they are entitled to qualified immunity.

### THIRD AFFIRMATIVE DEFENSE

Defendants aver that they are entitled to discretionary function immunity on any state law claims which may have been pleaded.

### FOURTH AFFIRMATIVE DEFENSE

Defendants aver that the claims made by Plaintiff are completely without merit and should be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e) (2) (B) (i).

### RESERVATION OF DEFENSES

The Defendants reserve the right to plead additional defenses as they become known in the course of discovery, as may be allowed by the Court.

### JURY DEMAND

**Defendants demand a trial by struck jury on all issues so triable.**

Respectfully submitted this the 13th day of March, 2008.

                                                                    /s/ Wallace D. Mills_____
                                                                    Wallace D. Mills (MIL 090),
                                                                      Assistant City Attorney

**OF COUNSEL:**
City of Montgomery Attorneys Office
103 N. Perry St.
Montgomery, AL 36104
334.241.2050
FAX 334.241.2310

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above and foregoing Written Report and Answer to the following by electronic mail or placing a copy of same in the United States Mail, postage, prepaid, this 13th day of March, 2008:

Thomas Veitch #180586
Kilby Correctional Facility
Dorm H Bed 47A
P.O. Box 150
Mt. Meigs, AL  36057

                                                                 /s/ Wallace D. Mills_____
                                                                    Of Counsel

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS DANIEL VEITCH,<br>AIS#180586<br><br>      Plaintiff,<br><br>vs.<br>D.K. CORKRAN, et al.,<br><br>      Defendant. | )  Case No.: 2:08-cv-0043-MEF<br>)<br>)  **AFFIDAVIT OF D.K. CORKRAN**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

STATE OF ALABAMA

COUNTY OF MONTGOMERY

    In person appeared before the undersigned officer, duly authorized to administer oaths, Corporal D.K. Corkran, who states under oath as follows:

    1. I have personal knowledge of the facts set forth in this affidavit. I am an adult resident citizen of the State of Alabama and I am competent to give this affidavit.

    2. I am a Corporal in the Montgomery Police Department assigned to the Patrol Division.

    3. On Thursday, October 26, 2006 at approximately 1912 hours, a call went out over the radio involving a business robbery at 4339 Atlanta Highway, ICBY Yogurt. A lookout of the suspect was given while units were in route. The lookout described the suspect as a white male in his forties and advised that the suspect had fled the business in a champagne car headed away from the business possibly east. I was in the area of Federal Drive when Unit 439 (Detective Thornell) advised me that the possible make and model of the suspect vehicle would be a 2000 Saturn LS1 tag #3A4999V

1



DEFENDANT'S EXHIBIT A

silver in color. I observed a vehicle matching that description headed north on Federal Drive in the area of Sumter Avenue. I turned my vehicle around to confirm the suspect vehicle's tag number. I got behind the vehicle as it took a left onto Crestview Drive off of Federal Drive and I confirmed the tag displayed on the vehicle as 3A4999V. I advised channel 1 that I was behind the suspect vehicle and the suspect turned right onto Fairground Road headed north. I advised dispatch that I was waiting for additional units and that I had not attempted to stop the vehicle. I continued to follow the suspect until we approached Fairground Road and Powell Lane when he began to slow down. I observed another patrol car on Traffic Operations Drive at Fairground waiting for us to pass when the suspect accelerated and took a sharp left hand turn toward Powell Lane. The suspect had already passed Powell Lane, so when he turned he ended up on the railroad tracks running parallel to Powell Lane off the right side of the roadway. It appeared the suspect was trying to free the vehicle from the tracks and get onto Powell Lane when he drove into the ditch between Powell Lane and the railroad tracks continuing to drive toward East Street. I drove parallel to the suspect on Powell Lane and as we passed Flintstone Court he pulled the vehicle out of the ditch and back on the roadway in front of my vehicle. I advised channel 1 that the suspect was attempting to flee and that we were headed on Powell Lane toward East Street. As we approached East Street the suspect attempted to make the left turn but lost control and made a 180 degree spin on East Street facing the driveway of 3466 East Street. The suspect then drove through the driveway at that residence and accelerated back onto Powell Lane striking Unit 205's (Caldwell) vehicle, 6210-3226. After striking Unit 205 the suspect vehicle drove into the ditch facing the railroad tracks where it stopped.

    I exited my patrol vehicle with my service weapon drawn and commanded the suspect to get out of his car. The suspect got out and lay down on the ground, face down with his hands out. I knelt and placed my knee on the suspect's back and ordered him to place his hands behind his back. The suspect was compliant, and I holstered my weapon and placed him in handcuffs.

Then I dismounted the suspect and called for a paramedic for the other patrol officer who was trapped in her vehicle. Within a couple of minutes, other units arrived, and the suspect was placed in the back of a patrol car. At no point did the suspect put up any struggle. He became compliant with officers immediately after his vehicle came to rest.

The suspect was later identified as 51 year old white male Thomas Daniel Veitch, Date of Birth 2/5/55 of 640 Groveland Drive. Veitch was transported back to the scene of the robbery where he was positively identified as the robbery suspect. He was then transported to the Detective Division where he was turned over to Unit 439 (Detective Thornell) for questioning.

Further the affiant saith not.

Corporal D.K. Corkran

STATE OF ALABAMA

COUNTY OF MONTGOMERY

SWORN to and SUBSCRIBED before me this the ___11___ day of March, 2008.

Notary Public
My Commission Expires

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Sept 23, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

# Emergency Medical Run Report

☐ NON-EMERGENCY  ☐ O.C.L.

| Incident Date | Incident # | Run # | Service Name | State ID # | Unit / Shift | Cancelled By |
|---|---|---|---|---|---|---|
| 10-26-06 | 24618 | 351 | MFD | 313 | 90-B | |

**Call Location:** 320 N. Ripley ST

**Call Type:**

**Call Method:** ☒ 911 / Telephone / Private / ☒ Police Department / Sheriff Office / State Trooper

**Times:**
- Call Received: 2008
- Dispatched:
- Enroute:
- Location On Scene: 2012
- Transport:
- Destination / Hospital:
- In Service: 2035
- Mileage
- Miles To Scene: 3
- Miles From Scene: —

### Patient Info
- **Name:** Thomas Death
- **Age:** 55
- **D.O.B.:**
- **Gender:** M
- **Address:**
- **SSN #:**
- **Race:** W
- **City, State, Zip:**
- **Phone:**

### Medical History
- Current Medications: ☐ Brought With Patient ☐ None ☐ List Attached ☐ Unknown
- Allergies: ☐ None ☐ Unknown
- Medical History: None / Allergies / Asthma / Cardiac / COPD / Diabetes / HTN / Resp Fail / Other / Unknown / AMS/Behav / Cancer / CHF / CVA / Drug / Alch / Renal Fail / Seizure / Other

### Run Info
**Chief Complaint:** Pain to R

| AVPU Scale | Speech | Skin | Color | Respirations | Pulse | Pupils |
|---|---|---|---|---|---|---|
| ☒ Alert | Coherent | Normal | Normal | Normal | Normal | P.E.A.R.L. |
| Voice | Incoherent | Moist | Cyanotic | Crowing | Rapid | Dilated L/R |
| Pain | Hysterical | Dry | Pale | Distressed | Slow | Fixed L/R |
| Unresponsive | Slurred | Hot | Flushed | Irregular | Regular | Unequal L/R |
| Combative | Silent | Cool | Ashen | Absent L/R | Irregular | Pinpoint L/R |
| Deceased | Abusive | Other | Jaundice | Other | Weak, Thready | Sluggish L/R |
| Other | Other | | Other | | Absent | Blind L/R |

| Time | Pulse | RR | SpO2 | BP Systolic/Diastolic | Procedure | Medication / IV Solution | Route | Dosage / Rate | Meas 1/2/3/4 | Notes / Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | 92 | 22 | 95% | 140 Pm | | | | | | |

### NARRATIVE

PT involved in MVC earlier. Police had him in custody @ Police station c/o pain to rib area. Checked and recorded vital signs. No obvious injury noted. Advised P.D. that pt. needed to be X-rayed. Turned pt. over to Haynes for trans to E.R.

Contacted Jackson advised of pt & care.

Accident happened approx 1½ hrs prior to our call.

| Person Receiving Patient | Date | Patient Disposition | Transported By / To | Crew Member 1 | Number |
|---|---|---|---|---|---|
| x [signature] | 10/26/06 | ☐ P.O.V. ☐ Refused ☐ Ambulance/E ☒ Ambulance/Non E ☐ Hearse/DFS ☐ Other ☐ None | Haynes / Jackson | [signature] | 8720207 |
| | | Patient Outcome: ☐ Improved ☐ No Change ☐ Deteriorated | | Crew Member 2 [signature] | 970142 |
| Authorizing Physician | Date | | | Crew Member 3 | Number |
| Medical Control # | | | | Crew Member 4 | Number |

I HAVE RECEIVED A COPY OF THIS AGENCIES PRIVACY POLICY

SIGNATURE _____ DATE _____
THIS IS TO CERTIFY THAT I AM REFUSING TREATMENT / TRANSPORT AND HAVE BEEN INFORMED OF THE RISKS OF DOING SO.

PATIENT _____ DATE _____ WITNESS _____ DATE _____

DEFENDANT'S EXHIBIT B