IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS DANIEL VEITCH,      )
AIS #180586,                               )
                                                     )
          Plaintiff,                           )
                                                     )
v.                                                 )          CASE NO. 2:08-CV-43-MEF
                                                     )                    [WO]
                                                     )
D. K. CORKRAN, et al.,                 )
                                                     )
          Defendants.                       )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Thomas Daniel Veitch ["Veitch"], a state inmate,

challenges the constitutionality of actions taken against him by an officer of the

Montgomery Police Department during his arrest for first degree robbery on October 26,

2006.  Veitch names D. K. Corkran, the arresting officer, and Art Baylor, the former chief

of police for the Montgomery Police Department, as defendants.  The allegation central to

Veitch's complaint is that defendant Corkran subjected him to excessive force in violation

of his constitutional rights.  Specifically, Veitch contends Corkran kicked him in the right

side "while plaintiff was lying face down, handcuffed, fracturing 2 ribs...."  *Plaintiff's*

*Complaint - Court Doc. No. 1* at 3.  Veitch further alleges defendant Baylor "by proxy as

supervisor" is liable for the actions of officer Corkran and for "allowing this violation

without punishment of Cpl. Corkran...." *Id*. at 3. Veitch seeks initiation of criminal charges against defendant Corkran and monetary damages for the asserted violations of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing Veitch's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment. *Order of March 14, 2008 - Court Doc. No. 16*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and the plaintiff's response in opposition to this motion, the court concludes that the defendants' motion for summary judgment is due to be granted in part and denied in part.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

When the defendants meet their evidentiary burden and demonstrate the absence of any genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact

exists when the nonmoving party produces evidence that would allow a reasonable fact-

finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord
> deference to the views of prison authorities.  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendants' properly supported motion for

summary judgment, Veitch is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of constitutional violations.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that

party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine issue

of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11ᵗʰ Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11ᵗʰ Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11ᵗʰ Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a

6

reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Veitch has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force claim against defendant Corkran. Defendant Baylor, however, is entitled to summary judgment on all of the claims lodged against him by Veitch.

## III.  DISCUSSION

### A.  Synopsis of Facts

At this stage of the proceedings, the court must "take the facts alleged in the complaint [and response in opposition to summary judgment] as true and construe them in the light most favorable to [Veitch]. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)." *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). In that light, the facts are that on October 26, 2006, defendant Corkran, while on patrol in Montgomery, Alabama, received a radio dispatch involving the robbery of a business. This dispatch contained a

description of the robbery suspect, subsequently identified as Veitch, and the car utilized in the robbery. Corkran later received additional information regarding the tag number of the vehicle involved in the robbery. Corkran then observed a vehicle matching the description provided in the dispatch and proceeded to determine whether the tag number also matched the information he had received. Corkran confirmed the tag displayed on the vehicle matched the tag of the suspect vehicle and continued to follow the vehicle. Veitch describes the circumstances of his pursuit and arrest as follows:

> I sped up to lose pursuit of the police car. Cpl. D. K. Corkran was driving. As I approached the railroad crossing on Fairground Rd., I turned left onto the railroad tracks. The steep grade of the tracks caused my car to go into a long ditch running parallel to the tracks.
>
> I continued to drive in the ditch until I reached East St. which I believed was a dead end. I spun out 180 degrees and headed through a [residential] front yard back toward Powell Lane. While going through the front yard I hit a culvert of about 1-1.5 ft. [in] depth which sent my car airborne and out of control. As I touched down on Powell Lane, Unit 205, Officer [Cynthia] Caldwell's vehicle performed a pursuit stop maneuver by crashing into my right front fender, disabling my car which came to rest in the ditch by the tracks, nose first.
>
> At this point Cpl. Corkran approached the driver's side of my car and ordered me at gunpoint to exit the vehicle. I had my hands raised and asked if I could remove my seatbelt to get out. He told me to take it off and get out; I removed my seatbelt and exited my vehicle from the driver's side of the car. I immediately got on the ground, hands spread, at which point Cpl. Corkran got on my back and handcuffed me.
>
> I followed all orders and offered no resistance to arrest. Once I was handcuffed and still laying face down, Cpl. Corkran got off my back on my right side, stepped back one step and kicked me on my right side upper chest under my right arm. This assault fractured two ribs for which I was later treated at Jackson Hospital Emergency.

8

Then Cpl. Corkran got back on my back, put his head close to the left side
of my head and [made a threatening and derogatory statement].  I was then
placed in the patrol car.

*Plaintiff's Affidavit in Support of Response - Court Doc. No. 22* at 5.  Veitch maintains the

kick to his side after he had been restrained and offered no resistance constituted the use

of excessive force.

The facts relevant to the vehicle pursuit are not in dispute.  Defendant Corkran,

however, adamantly denies he kicked Veitch in the side.  With respect to this allegation,

Corkran maintains after Veitch's automobile came to a stop "I exited my patrol vehicle

with my service weapon drawn and commanded the suspect to get out of his car.  The

suspect got out and lay down on the ground, face down with his hands out.  I knelt and

placed my knee on the suspect's back and ordered him to place his hands behind his back.

The suspect was compliant, and I holstered my weapon and placed him in handcuffs.  Then

I dismounted the suspect and called for a paramedic for the other patrol officer who was

trapped in her vehicle.  Within a couple of minutes, other units arrived, and the suspect was

placed in the back of a patrol car.  At no point did the suspect put up any struggle.  He

became compliant with officers immediately after his vehicle came to rest." *Defendants'*

*Exhibit A to the Special Report (Affidavit of D. K. Corkran) - Court Doc. No. 14-1* at 2-3.[2]

---

[2]Pursuant to a discovery request filed by Veitch and an ensuing order of this court, the defendants submitted
a DVD copy of video footage captured by the dashboard camera mounted in defendant Corkran's patrol car on the
night of the October 26, 2006.  The court thoroughly reviewed this DVD and finds that it contains no evidence
relevant to the excessive force claim presented by Veitch.  Specifically, the court notes that: (1) The DVD contains
only footage of Corkran's vehicle pursuit of Veitch's automobile; (2) Due to Veitch's maneuvers to evade police,
the camera was not facing Veitch's automobile when his automobile came to rest in the ditch; and (3) The DVD ends
immediately prior to Corkran exiting his patrol unit.

### B.  Lack of Criminal Charge

Veitch maintains defendant Baylor violated his constitutional rights because Baylor failed to criminally prosecute defendant Corkran for assault.  In to order to proceed on a claim under 42 U.S.C. § 1983, the conduct complained of must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981).  A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."  *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981).  Consequently, Veitch has no constitutionally protected interest in the criminal prosecution of defendant Corkran and defendant Baylor is therefore entitled to summary judgment on this claim.

### C.  Negligence Claim

In his response to the defendants' report, Veitch alleges "defendant Art Baylor was negligent after the fact when he ... took no action against defendant D. K. Corkran." *Plaintiff's Response - Court Doc. No. 22* at 3.  This claim entitles Veitch to no relief from this court.

The law is well settled that the Constitution is not implicated by negligent acts of an official. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (protections of the Constitution "are just not triggered by lack of due care by prison officials.").  Based on the foregoing, the court concludes that any claim presented by Veitch based on alleged negligence does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.

### D.  Respondeat Superior - Art Baylor

The law is well settled that a defendant "can have no respondeat superior [or vicarious] liability for a section 1983 claim."  *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1115-1116 (11th Cir. 2005) (In establishing liability under § 1983, a prisoner cannot rely on theories of vicarious liability or respondeat superior.).  Thus, defendant Baylor is liable for the challenged action of officer Corkran only if Baylor "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted).

Veitch concedes defendant Baylor did not personally participate in the force used against him during his arrest.  Based on the foregoing, defendant Baylor may be held liable in this 42 U.S.C. § 1983 action if his actions bear a causal relationship to the purported

violation of Veitch's constitutional rights.  To establish the requisite causal connection and

therefore avoid entry of summary judgment in favor of this defendant, Veitch must present

sufficient evidence of either "a history of widespread abuse [that] put[] [Baylor] on notice

of the need to correct the alleged deprivation, and [Baylor] fail[ed] to do so...." or "a ...

custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ...

facts [that] support an inference that [Baylor as a supervisory official] directed the

subordinates to act unlawfully, or knew that the subordinates would act unlawfully and

failed to stop them from doing so."  *Cottone*, 326 F.3d at 1360 (internal punctuation and

citations omitted).   This standard of supervisory liability "is extremely rigorous."

*Gonzalez*, 325 F.3d at 1234.  A thorough review of the pleadings and evidentiary materials

submitted in this case demonstrates Veitch has failed to meet this burden.

The record before the court contains no evidence to support an inference that Baylor

directed officer Corkran to act unlawfully or knew this officer would act unlawfully and

failed to stop such action.  Veitch has likewise presented no evidence indicating a history

of widespread abuse by Montgomery police officers which put Baylor on requisite notice

of incidents of excessive force against arrestees.   Consequently, neither method of

establishing liability under the causal relationship test provides a basis for liability under

§ 1983.   In addition, the record is devoid of evidence that a custom or policy of the

Montgomery Police Department resulted in a violation of Veitch's constitutional rights.

*Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990);

12

*Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Summary judgment

is therefore due to be granted in favor of defendant Baylor on the excessive force claim.

### E.  Excessive Force Claim against Officer D. K. Corkran

As the Eleventh Circuit explained:

> There are a number of different types of claims that arise under the Eighth Amendment's cruel and unusual punishment clause, including distinct claims for basic cruel and unusual punishment, for excessive force against prisoners, and for deliberate indifference to prisoners' serious medical needs. Courts apply a different test to each. *See, e.g.*, *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11ᵗʰ Cir. 2005) (applying the test for an Eighth Amendment deliberate indifference violation); *Skrich v. Thornton*, 280 F.3d 1295, 1300-01 (11ᵗʰ Cir. 2002) (applying the test for an Eighth Amendment excessive force violation); *Hope v. Pelzer*, 240 F.3d 975, 978 & n.7 (11ᵗʰ Cir. 2001) (applying the test for an Eighth Amendment basic cruel and unusual punishment violation), *rev'd on other grounds*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).  Pretrial detainees [and arrestees], who are not protected by the Eighth Amendment, can bring the same claims under the Fourteenth Amendment. *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11ᵗʰ Cir. 2005) ("[I]t makes no difference whether [the plaintiff] was [an arrestee,] a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving ... [arrestees and] pretrial detainees.'" (omission in original) (citation omitted)).

*Danley*, 540 F.3d at 1306; *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11ᵗʰ Cir. 1996)

(citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees

in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the

Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims

by convicted prisoners....  However, the applicable standard is the same, so decisional law

involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.).  Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment, and not the Fourteenth Amendment's guarantee of due process, when addressing the plaintiff's claims for relief because the standard for violations of the Eighth Amendment apply to arrestees and detainees through the Due Process Clause of the Fourteenth Amendment.  *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

With respect to Veitch's claim of excessive force, defendant Corkran argues he is entitled to qualified immunity.  However, the law of this Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth or Fourteenth Amendments because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation.  *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  Moreover, the use of "gratuitous force" by a police officer

14

against an arrestee who is compliant and not resisting is clearly prohibited by the Constitution. *Skrtich*, 280 F.3d at 1303; *Danley*, 540 F.3d at 1309 (continued use of force against prisoner who is not resisting constitutes excessive force). Thus, a qualified immunity defense is not available when a plaintiff asserts the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Id*. at 1302; *see also Hudson,* 503 U.S. at 9-10; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether the plaintiff's allegation that defendant Corkran maliciously and sadistically used excessive force against him by kicking him in the side after he had been handcuffed and when he offered no resistance to arrest, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

The Eleventh Circuit recently explained that

> [w]hether a [defendant's] use of force is excessive, and thus violates the inmate's Fourteenth Amendment right to be free from cruel and unusual punishment, depends on whether the [defendant's] act "shocks the conscience," *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was applied ... maliciously and sadistically for the very purpose of causing harm.'" *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).

*Danley*, 540 F.3d at 1307.

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore

15

discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

Additionally, it is well settled that

[w]hen [officers] continue to use substantial force against [an arrestee] who has clearly stopped resisting-whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated-that use of force is excessive. *See Bozeman*, 422 F.3d at 1272 (giving special weight to the fact that the jailers "continued [to] use ... force in a manner that was severe enough to render [the plaintiff], at the very least, unconscious after [he] had surrendered"); *Skrtich*, 280 F.3d at 1303 ("[G]overnment officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated."); *see also Harris v. Chapman,* 97 F.3d 499, 505-06 (11th Cir.1996); *Davis v. Locke*, 936 F.2d 1208, 1212-13 (11th Cir.1991); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (11th Cir.1988); *Perry v. Thompson*, 786 F.2d 1093, 1093-95 (11th Cir.1986); *cf. Vinyard*, 311 F.3d at 1348. Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need.

*Danley*, 540 F.3d at 1309.

16

Veitch asserts defendant Corkran kicked him in the side after he had been handcuffed and while he lay prone on the ground offering no resistance to arrest. *Plaintiff's Complaint - Court Doc. No. 1* at 3; *Plaintiff's Affidavit in Support of Response - Court Doc. No. 22* at 5. Veitch maintains this kick to his side caused him to suffer two broken ribs. Defendant Corkran denies he kicked Veitch in his side. Corkran maintains the only force utilized against Veitch at the time of his arrest occurred when he placed his knee in Veitch's back for purposes of placing handcuffs on him. Viewing the complaint in the light most favorable to Veitch, the court concludes Veitch has set forth facts which demonstrate a violation of his constitutional rights. "Having established a constitutional violation, the next step in the qualified immunity analysis usually is to determine whether the right was clearly established.   *See Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. However, we have held that 'there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002)." *Danley*, 540 F.3d at 1310. Thus, defendant Corkran is not entitled to qualified immunity. *Id*.; *Skrtich*, 280 F.3d at 1301. Under the facts presented by the plaintiff, a disputed issue of material fact exists regarding whether the alleged use of excessive force occurred and the motion for summary judgment with respect to the excessive force claim against defendant Corkran is therefore

due to be denied.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendant Baylor's motion for summary judgment on the claims lodged against him by the plaintiff be GRANTED.

2.  Defendant Corkran's motion for summary judgment on the plaintiff's excessive force claim be DENIED.

3.  This case be set for a jury trial before the district judge assigned this case on the plaintiff's excessive force claim against defendant Corkran.

It is further

ORDERED that on or before February 15, 2011 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 31st day of January, 2011.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

19